IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.                                    CRIMINAL ACTION NO. 1:08CR69

JEFFREY MIHELICH,
                    Defendant.

## REPORT AND RECOMMENDATION/OPINION

On October 15, 2008 came the defendant, Jeffrey Mihelich, in person and by his counsel,

Brian J. Kornbrath, and also came the United States by Shawn Angus Morgan, its Assistant United

States Attorney, for hearing on Defendant's Motion To Suppress Evidence [Docket Entry 13], filed

on October 3, 2008, and the United States' Memorandum of Law in Response [Docket Entry 16]

filed October 9, 2008.  The Court heard the testimony of West Virginia State Trooper Andrew

Shingler, West Virginia State Trooper Kenneth William Huddleston, and Gilmer County Magistrate

Robert Minigh; admitted into evidence Defense Exhibits 1 (Application/Affidavit for Search

Warrant) and 2 (Incident Report); and heard the arguments of counsel.

### Procedural History

Jeffrey Mihelich was indicted by a grand jury attending the United States District Court for

the Northern District of West Virginia on September 3, 2008.  The indictment charges defendant

with Conspiracy to Possess with Intent to Distribute and Distribute Less than 50 Kilograms of

Marijuana and Less than 500 Grams of Cocaine Hydrochloride (Count One); Distribution of

Marijuana -- Aiding and Abetting (Count Two); Possession with Intent to Distribute Marijuana and

Cocaine Hydrochloride Within 1000' of a Protected Location (Count Three); and Maintaining Drug

Involved Premises Within 1000' of a Protected Location (Count Four).  A Summons was issued and

Defendant was arraigned on September 16, 2008.

<b>Statement of Relevant Facts</b>

On September 16, 2007, Defendant was a lawful resident of his home located at 3 Sumac

Court, Apartment 1, Glenville, West Virginia 26351.  On that same date, West Virginia State Police

Corporal Andrew Shingler applied for and received a search warrant for Defendant's residence from

Gilmer County Magistrate Robert Minigh. Magistrate Minigh placed Cpl. Shingler  under oath, at

which time the officer swore to the accuracy of the affidavit he executed in support of the search

warrant.  The written affidavit in support of the search warrant was signed by Cpl. Shingler, and

contained the following information:

> That on the 16th day of September 2007, and prior to the making of this complaint,
> in the said County of Gilmer, Jeffrey Alan Mihelich did unlawfully and feloniously
> possess, possess with Intent to Deliver, and Delivery [sic] of a Controlled Substance
> in violation of West Virginia Code 60A-4-401 . . . . and that the facts for such belief
> are **SEE ATTACHED AFFIDAVIT** . . . .

The first page of the affidavit in support of the search warrant details Cpl. Shingler's

extensive training and experience.  The second page contains the specific facts in support of the

request for the search warrant.  The pertinent paragraphs are as follows:

> . . . .
>
> 3.      On Saturday, September 15, 2007, at approximately 2000 hrs, your affiant
>         received information from Deputy Darren Stout, serving in his official
>         capacity as an agent for the Harrison/Lewis County Drug Task Force, the
>         information was as follows:
>
> 4.      On Saturday, September 15, 2007, at approximately 1900 hrs, Lewis County
>         Deputy Sheriff G.P. Hoskins initiated a traffic stop in the Jane Lew area of
>         Lewis County, WV.  The traffic stop was based upon an anonymous call that
>         stated that the individual operating this vehicle was observed to be handing

2

a plastic bag to another person's vehicle in exchange for money. After initiating the traffic stop, Deputy Hoskins obtained consent to search the vehicle in question. Deputy Hoskins located a quantity of marijuana that was confirmed by a field test to be marijuana, a Schedule I Controlled Substance. Deputy Hoskins contacted Deputy Darren Stout of the Harrison/Lewis Drug Task Force. The individual in question was subsequently interviewed by Deputy Stout. The individual gave full statement as to the identity of the supplier, being one Jeffrey Alan Mihelich of Glenville, Gilmer County WV. Deputy Stout relayed all pertinent information to this affiant.

5.      The cooperating individual had in his/her possession a distribution quantity of marijuana in his/her possession. This individual traveled from Glenville, Gilmer County, WV to Jane Lew, Lewis County, WV to further a drug conspiracy of distribution of a controlled substance, marijuana, a Schedule I Controlled Substance.

6.      The drug supplier, identified as Jeffrey Alan Mihelich of 3 Sumac Court Apartment 1, Glenville, WV having a date of birth of August 24, 1983.

. . . .

Gilmer County Magistrate Robert Minigh testified that he remembers issuing the search warrant for Defendant's residence late September 15th or early 16th 2007. He was most likely called by 911 and notified that officers were in need of a search warrant. He proceeded to his office in Glenville. He recalled Cpl. Shingler being present, along with a deputy from the Lewis County Sheriff's Department. He knows Trooper Huddleston, but could not recall if he had been present. Magistrate Minigh testified that he was presented with an affidavit for a search warrant. He read the affidavit, determined there was probable cause, and issued the search warrant. He then typed the actual warrant. Magistrate Minigh testified he assumed he and the officers made small talk, but did not have a particular recollection of doing so.

Magistrate Minigh testified that if any information he believed was important had been provided to him that was not in the affidavit, he would have requested the officer write that information in the affidavit. The officers may have provided him more information than was

3

contained in the four corners of the affidavit, but he could not specifically recall that they did. When asked if the affidavit provided the date and/or time that the confidential informant had been to Defendant's residence and obtained the marijuana, Magistrate Minigh responded that the information was contained in the affidavit at paragraph four, which says the traffic stop of the CI was initiated on September 15, 2007. He inferred from that that the CI had traveled from Defendant's residence that day. The affidavit also stated that the CI traveled from Glenville, Gilmer County, and that the CI's supplier lived at 3 Sumac Court, Apartment 1, Glenville. He understood the person's home to be searched was Defendant's. He testified that had he not believed the CI had traveled from Glenville to Jane Lew on that date, he would not have issued the warrant.

Magistrate Minigh testified that he may have had some conversation with the officers, then read the affidavit, then typed up the search warrant. He administered the oath to Cpl. Shingler after reading the affidavit and before the issuance of the warrant. If he had asked any questions, he would have done so after administering the oath. After he read the affidavit, if he believed he had needed any more information, he would have asked questions after placing the officer under oath. If he had considered any of the information so given was important, he would have made the officer write it on the affidavit. This did not happen normally. Magistrate Minigh testified that the information he received in this case came to him only through the affidavit. To his best recollection, everything he used to make his probable cause determination was contained in the "square of that document." If he had believed that affidavit was deficient and asked questions, he would have asked that any additional information he obtained be put in the affidavit. Magistrate Minigh testified that the written work product (affidavit) was what he swore Cpl. Shingler to, and he did not believe there was any other information provided, or he would have had it included in the affidavit.

## Contentions of the Parties

Defendant contends the Court must suppress the evidence seized by the police during the search of Defendant's residence, because the search was illegal and unconstitutional in that:

(1) the search warrant application failed to establish probable cause to search defendant's residence and

(2) the good faith exception to the exclusionary rule does not apply as the affidavit in support of the search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

The United States contends that:

(1) probable cause supports the issuance of the search warrant and

(2) even assuming *arguendo* that the search warrant was defective (which the United States does not concede), the good faith exception saves the evidence seized from exclusion.

## Discussion

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." There is probable cause to search a home if there is a fair probability that evidence of a crime is located within the residence. See United States v. Murphy, 241 F.3d 447, 457 (6th Cir. 2001). Whether probable cause exists must be determined "under the totality of the circumstances." See Illinois v. Gates, 462 U.S. 213 (1983).

In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. United States v. Blackwood, 913 F.2d139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review but instead limits itself to the information presented to the magistrate who issued the warrant. Further, the reviewing court is only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Id. See also United States v. Wilhelm, 80 F. 3d. 116, 118 (4th Cir. 1996).

Although the Court heard the testimony of Cpl. Shingler and Tpr. Huddleston, who each testified that additional information outside the affidavit was provided to Magistrate Minigh, the Court finds, based on Magistrate Minigh's testimony, that he did not consider any information beyond that provided in the four corners of the affidavit. It is therefore not relevant to this decision whether additional information was provided to Magistrate Minigh by the officers. Therefore, in determining the validity of the search warrant in this case based on its alleged insufficiency, the

Court limits itself to the four corners of the affidavit of Cpl. Shingler, as presented to Magistrate

Minigh, there being no evidence that Magistrate Minigh considered anything other than the affidavit.

This Court also applies the requirements of the Fourth Amendment of the United States Constitution

and interpretive Fourth Circuit decisions in determining the validity of the state search warrant. It

does not apply state law standards inasmuch as it is the admissibility of evidence in the federal court

which is at issue. United States v. Clyburn, 24 F.3d 613, 616 (4th Cir. 1994).

The determination of whether Magistrate Minigh had probable cause to issue the warrant to

search Defendant's residence is made by answering the question: From a totality of the

circumstances presented to the magistrate, was there "a fair probability that contraband or evidence

of a crime" would be found in Defendant's residence? Illinois v. Gates, 462 U.S. 213, 238 (1983).

"Probable cause is a fluid concept– turning on the assessment of probabilities in particular factual

contexts– not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232.

Defendant argues that the search warrant application failed to establish probable cause to

search Defendant's residence for four reasons:   First, there is no information contained in the

affidavit to justify the veracity/ reliability of the informant. Second, there is no basis for the

knowledge that Defendant was the supplier of the drugs to the CI; Third, there is no time frame set

out in the affidavit to indicate when the marijuana was provided to the CI– it could have been weeks

earlier; and Fourth, there is no information that supports that evidence (drugs) would be found in

Defendant's residence, as opposed to somewhere else.

The United States argues that information in the affidavit does not have to be as specific as

Defendant claims.  The magistrate can, as he did here, draw reasonable inferences from the

information provided as to the veracity of the informant, the time frame involved, the nexus, and the

basis of knowledge of the informant.

The probable cause standard does not:

> require officials to possess an airtight case before taking action. The pieces of an
> investigative puzzle will often fail to neatly fit, and officers must be given leeway to
> draw reasonable conclusions from confusing and contradictory information, free of
> the apprehension that every mistaken search or seizure will present a triable issue of
> probable cause.

Taylor v. Farmer, 13 F.3d, 117, 121-122 (4th Cri. 1993). Accord Ornelas v. United States, 517 U.S.

690, 696 (1996) (Probable cause exists "where the known facts and circumstances are sufficient to

warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be

found").

Probable cause may be established through information from any reliable source or sources,

Draper v. U.S., 358 U.S. 307 (1959), or even through an anonymous tip which has been

corroborated. Gates, 462 U.S. at 241. Since Gates was decided in 1983, it has been the rare case

in which the Fourth Circuit has found a search warrant based on an informant tip to be inadequate,

particularly where the information has been corroborated. See, e.g., United States v. Hodge, 354

F.3d 305 (4th Cir. 2004); United States v. Miller, 925 F.2d 695 (4th Cir. 1991)(reliability of

informant's information may be inferred from factual circumstances, even if affidavit otherwise fails

to assert informant's reliability). The fact that an informant is admitting to a crime or providing

information in hopes of leniency for past crimes is "indicia of reliability" of the information

provided. United States v. Harris, 403 U.S. 573 (1971).

Here the information used in the affidavit was obtained from the confidential informant

whom police had stopped due to a tip that the informant was handing plastic baggies of something

from his car to another in exchange for money. When the police detained him, the informant had

a distribution quantity of marijuana in his possession, and told police he had traveled to Glenville

and had obtained the marijuana from Defendant. He was therefore not merely an anonymous tipster,

but was an identifiable informant, in possession of a distribution quantity of drugs, which he

admitted he had obtained from Defendant.

There must be a sufficient nexus shown between the criminal conduct and the place to be

searched in order for the search warrant to pass constitutional muster.  In United States v. Lalor, 996

F.2d 1578 (4th Cir. 1993), the Fourth Circuit stated:

> In this and other circuits, residential searches have been upheld only where some
> information links the criminal activity to the defendant's residence.  United States v.
> Williams, 974 F.2d 480, 481-81 (4th Cir. 1992).

The affidavit states that the CI told police that he had obtained the drugs from the supplier,

Defendant, of Glenville, Gilmer County.  Although Defendant's actual street address did not come

directly from the informant, the address was contained in the affidavit. The police obtained the

defendant's address by a driver's license search of Defendant's name, which was given them by the

informant.

> [T]ime is a crucial element of probable cause.  A valid search warrant may issue only
> upon allegations of facts so closely related to the time of the issue of the warrant as
> to justify a finding of probable cause at that time."

United States v. McCall, 740 F.2d 1331 (4th Cir. 1994).  However,

> [t]he vitality of probable cause cannot be quantified by simply counting the number
> of days between the occurrence of the facts supplied and the issuance of the affidavit
> . . . Rather we must look to all the facts and circumstances of the case, including the
> nature of the unlawful activity alleged, the length of the activity, and the nature of the
> property to be seized.

Id.  at 1336.

Although there is, as Defendant argues, no time frame expressly stated in the affidavit for

when the confidential informant obtained the drugs from Defendant, when asked, Magistrate Minigh

testified that paragraph four of the affidavit told him the CI had obtained the drugs on September 15,

the same day he was stopped. He also testified that the affidavit said that the CI had traveled from

Gilmer County and that the supplier of the drugs was Defendant, Jeffrey Mihelich, with an address

of 3 Sumac Court Apartment 1, in Glenville, in Gilmer County. He also understood from the

affidavit that the person's home to be searched was that of Defendant, Jeffrey Mihelich. In

summary, he believed from the affidavit that the CI had had a distribution quantity of marijuana in

his possession, that Defendant was his supplier, and that the CI had traveled to Defendant's

residence on September 15, 2007, to further a drug conspiracy of distribution of marijuana.

Probable cause exists "where the known facts and circumstances are sufficient to warrant a

man of reasonable prudence in the belief that contraband or evidence of a crime will be found."

Ornelas v. U.S., 517 U.S. 690 (1996). The determination of probable cause by Magistrate Minigh

is to be shown "great deference." United States v Blackwood, 913 F.2d 139 (4th Cir. 1990). Under

a "totality of the circumstances," the undersigned finds there was substantial evidence in the affidavit

to support Magistrate Minigh's decision to issue the warrant – in other words, that there was "a fair

probability that contraband or other evidence of a crime w[ould] be found in [Defendant's

apartment]. Illinois v. Gates, 462 U.S. 213 (1983).

The Government also argues that, even if probable cause to issue the warrant was not found,

the evidence obtained should not be suppressed, under the good faith exception announced in United

States v. Leon, 468 U.S. 897 (1884). Defendant argues that the good faith exception to the

exclusionary rule does not apply as the affidavit in support of the search warrant was so lacking in

indicia of probable cause as to render official belief in its existence entirely unreasonable.

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

U.S. v. Lalor, 996 F.2d 1578 (4th Cir. 1993 (quoting Leon); Accord U.S. v. Bynum, 293 F.3d 192 (4th Cir. 2002)(applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable.") In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon at 922. The good faith exception may apply even where a search warrant is "facially deficient" as long as "the warrant . . . was not so facially deficient as to preclude reasonable reliance on it . . . ." U.S. v. Dickerson, 166 F.3d 667 (4th Cir. 1999).

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for rule. "First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." 468 U.S. 897, 915, 104 S. Ct. 3405, 3417.

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer

had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 918, 104 S. Ct. 3405, 3419. The Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922, 104 S. Ct. 3405, 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. 3405, 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search

12

warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;

> (2) the magistrate wholly abandoned his detached and neutral judicial role;

> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable; and

> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

The undersigned does not find that any of the four situations which would make the good faith exception inapplicable exist in this case. The undersigned finds nothing in the affidavit false or misleading. Neither does the undersigned find that Magistrate Minigh "wholly abandoned his detached and neutral judicial role." Finally, a review of the affidavit does not indicate it "was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable." This is not a case of a "bare bones" affidavit, relying on anonymous informants.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). If the affidavit is lacking, it is because of "weak inferences," not because it lacked facts from which Magistrate Minigh could determine probable cause. Magistrate Minigh inferred that the CI had driven from Defendant's residence in Glenville to Jane Lew on September 15, 2007, a reasonable inference.

Cpl. Shingler and Tpr. Huddleston testified at the Motions hearing that they had actually

driven the confidential informant to the location from which he said he obtained the marijuana. They corroborated the address as Defendant's address. They also testified that the CI had described to them a black backpack in a bedroom closet, in which the marijuana was kept. As Defendant points out, however, Cpl. Shingler's affidavit said nothing about the officers having driven the CI to Defendant's apartment or about the black packpack. In <u>Bynum</u>, the Fourth Circuit discussed the situation where information known to the affiant was omitted from his affidavit:

> If the district court relied on the absence of this information in refusing to apply *Leon's* good faith exception, that reliance was in error. When, as here, the affidavit itself provides information not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," a court should not refuse to apply the *Leon* good faith exception just because the officer fails to include in that affidavit all of the information known to him *supporting* a finding of probable cause.

<u>Bynum</u>, 293 F.3d at 199 (internal citations omitted) (emphasis in original).

Finally, the warrant was not "so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid." The affidavit states with particularity the places to be searched and the items to be seized.

For all the above reasons, the undersigned finds the officers' reliance on the search warrant issued by Magistrate Minigh was objectively reasonable. The good faith exception therefore renders the evidence seized in the search admissible, even if it had been found that the search warrant lacked probable cause.

## RECOMMENDATION

For the reasons herein stated, it is **RECOMMENDED** that Defendant's Motion To Suppress Evidence, Docket Entry 13, be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and

Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 21st day of October, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE